UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS B. EDLESON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRAVEL INSURED INTERNATIONAL, INC., and UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendants. | Case No.: 21-cv-323-WQH-SBC<br><br>**ORDER** |

HAYES, Judge:

    The matters before the Court are the (1) Motion for Summary Judgment filed by Defendants Travel Insured International, Inc. and United States Fire Insurance Company (collectively, "Defendants") (ECF No. 90); (2) Motion to File Documents Under Seal filed by Defendants (ECF No. 109); (3) Motion for Approval of Class Notice Plan filed by Plaintiff Louis B. Edleson (ECF No. 115); and (4) Appeal to Magistrate Judge's Decision Regarding Discovery to District Court ("Discovery Appeal") filed by Plaintiff (ECF No. 116).

/ / /

/ / /

## I. PROCEDURAL BACKGROUND

On February 23, 2021, Plaintiff filed a Class Action Complaint against Defendants Travel Insured International, Inc. ("Travel Insured") and United States Fire Insurance Company ("U.S. Fire"), alleging that Defendants violated California law by failing to refund travel insurance premiums paid for post-departure coverage on trips that were never taken.

On May 3, 2021, Defendants filed a Motion to Dismiss the Complaint for lack of standing and for failure to state a claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 20.) On September 23, 2021, the Court issued an Order granting in part and denying in part Defendants' Motion to Dismiss. (ECF No. 27.) The Order dismissed Plaintiff's request for injunctive relief for lack of Article III standing. *See id.* at 11–12.

On December 1, 2021, Plaintiff filed the operative First Amended Complaint ("FAC"), asserting claims against Defendants for unjust enrichment (Count 1) and violation of the Unfair Competition Law ("UCL") (Count 2). (ECF No. 34.) On December 14, 2021, Defendants filed a Motion to Dismiss the repleaded request for injunctive relief for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure. (ECF No. 35.) On March 7, 2022, the Court issued an Order granting Defendants' Motion to Dismiss and dismissing Plaintiff's request for injunctive relief for lack of Article III standing. *Id.* at 7.

On March 24, 2023, Plaintiff filed a Motion for Class Certification (ECF No. 60). On November 20, 2023, the Court granted the Motion for Class Certification, certifying the California Subclass. (ECF No. 82 at 22.)

On February 29, 2024, Defendants filed the Motion for Summary Judgment. (ECF No. 90.) On April 29, 2024, Plaintiff filed a Response in opposition to the Motion for Summary Judgment. (ECF No. 102.) On May 20, 2024, Defendants filed the Motion to File Documents Under Seal (ECF No. 109) and a Reply in support of the Motion for Summary Judgment (ECF No. 111).

On June 10, 2024, Plaintiff filed the Motion for Approval of Class Notice Plan. (ECF No. 115.)

On June 20, 2024, Plaintiff filed the Discovery Appeal. (ECF No. 116.) On July 15, 2024, Defendants filed a Response in opposition to Plaintiff's Discovery Appeal. (ECF No. 121.)

On July 22, 2024, Plaintiff filed a Reply in support of the Discovery Appeal (ECF No. 122) and Defendants filed a Response in opposition to the Motion for Approval of Class Notice Plan (ECF No. 123).

On July 29, 2024, the Court held oral argument on the Motion for Summary Judgment. (ECF No. 124.)

On August 5, 2024, Plaintiff filed a Reply in support of the Motion for Approval of Class Notice Plan. (ECF No. 125.)

## II.    FACTS

On July 30, 2019, Plaintiff and his wife purchased a Viking River Cruise tour, including airfare. (ECF No. 102-1, Pl. Resp. to DSUF, ¶ 1.) The tour was to depart on October 10, 2020, and return on October 28, 2020 (the "Trip"). *Id.* The Trip cost was $7,734 per person, with a total cost of $15,468. *Id.* On August 7, 2019, Plaintiff purchased through InsureMyTrip.com the Worldwide Trip Protector Plan (the "Plan") for $617 per person, with a total cost of $1,234 for Plaintiff and his wife. *Id.* ¶ 2. Plaintiff received the Plan and confirmations of coverage from InsureMyTrip.com and Travel Insured. *Id.* ¶ 10.

Travel Insured marketed the Plan. *Id.* ¶ 3. U.S. Fire underwrote a Travel Insurance Policy (the "Policy") that was included in the Plan. *Id.* A third-party provided non-insurance travel assistance services in the Plan. *Id.* The Policy contains many different insurance benefits that cover specified risks associated with the Trip. *Id.* The benefits and coverages in the Policy are not offered for sale separately. *Id.* The Policy does not contain an itemization of the insurance premium by type of benefit, nor does it "allow for an insured to bifurcate or deconstruct the Policy or return unused coverages for a partial refund of the total price paid for the Plan." *Id.* The Policy offers a 14-day "free look period," which

provides an insured a full refund of the premium if the Policy is canceled for any reason during the first 14 days after purchase. *Id.* ¶ 6. Plaintiff did not request a refund of the Policy's premium within 14 days of purchasing the Plan. *Id.* ¶ 12. The Plan is a "short term, single pay, single term, and non-renewable" plan. *Id.* ¶ 39.

Around late March 2020, the Trip was canceled and Plaintiff received from Viking River Cruises a full refund of his Trip payment. *Id.* ¶ 14. On or about April 27, 2020, Travel Insured received a message via its website from Plaintiff that Plaintiff had canceled his Trip and intended to submit a Trip Cancellation benefits claim. *Id.* ¶ 15. On April 28, 2020, Travel Insured provided a claim form and instructions. *Id.* On September 2, 2020, Travel Insured received from Plaintiff an email stating: "I attach the signed and complete claim form. I only ask for a refund of your travel insurance premium for this Viking river boat cruise we had to cancel in Europe because of COVID." *Id.* ¶ 16. Plaintiff's email contained a completed claim form that sought a refund of $1,234, the Plan cost, "by crossing off a section for claiming the cost of airline tickets, and writing 'Insurance' and 'Cost of travel insurance.'" *Id.*

In October 2020, Plaintiff and Travel Insured exchanged correspondences regarding Plaintiff's request for a refund of the Plan cost. *Id.* ¶ 17. Travel Insured explained to Plaintiff that there were no premium refunds after the 14-day free look period expired. *Id.* Travel Insured offered Plaintiff a voucher, which Plaintiff did not accept. *Id.* On January 4, 2021, Plaintiff sent another email to Travel Insured. *Id.* ¶ 18. Plaintiff requested a refund of the Trip cost as an alternative to any refund of the Plan premium. *Id.*

The rate manual applicable to the Plan that was filed with the California Department of Insurance ("CDI") describes how a single Gross Premium is calculated using different available rating factors. *Id.* ¶ 40. To calculate a single insured Gross Premium, the "manual rating," the expected claims costs pertaining to each benefit are aggregated together to find the single total "Expected Claims Per Trip." *Id.* The insured's age and trip cost vary the claim cost for each benefit. *Id.* Certain factors listed in the manual adjust the expected claim costs. *Id.*

## III. MOTION FOR SUMMARY JUDGMENT

### A. Contentions

Defendants contend that they are entitled to summary judgment on all remaining claims in the FAC because the Policy Plaintiff purchased was an "indivisible contract that was non-refundable after the 14-day free look period" and the evidence shows that the risk of loss for all coverages attaches and U.S. Fire assumes the risk upon purchase of the travel protection plan. (ECF No. 90-1 at 8.) Defendants contend that they are entitled to summary judgment on the remaining claims because there is no evidence that Defendants engaged in "unjust," "unfair," "unlawful," or "fraudulent" conduct. Defendants contend that Plaintiff's unjust enrichment claim fails as a matter of law because there is an enforceable contract between the parties that addresses the subject matter of premium refunds. Defendants contend that Plaintiff's UCL claim fails under the "fraud" prong because there is no alleged misrepresentation or omission by Defendants. Defendants contend that to the extent Plaintiff intended to request a refund for non-insurance assistance services, this claim is not alleged in the FAC and is otherwise baseless.

Plaintiff contends that Defendants are not entitled to summary judgment on any of Plaintiff's claims because the Policy covers both pre- and post-departure risks and "[i]t is up to the jury to determine, based on the evidence, whether the portion of the premiums should be returned to Plaintiff and the Class if they find that it would be unjust for Defendants to retain the entire premiums under circumstances where the trips covered by their Plans never happened." (ECF No. 102 at 13.) Plaintiff contends that Defendants' indivisibility argument lacks merit because it is not an element of Plaintiff's claims. Plaintiff contends that evidence exists to support each element of Plaintiff's claims, so the case must proceed to a jury. Plaintiff contends that there is disputed evidence as to whether 100% of the premiums are earned immediately upon purchase based on the "Effective Dates" listed in the Policy, the interpretation of the contract, Defendants' financial statements, and the report by Plaintiff's expert. Plaintiff contends that Defendants are not entitled to summary judgment on Plaintiff's unjust enrichment claim because Defendants'

interpretation of the Plan is disputed as to whether the contract addresses the subject matter of Plaintiff's claims. Plaintiff contends that Defendants are not entitled to summary judgment on his UCL claim, which is not based on "fraudulent" conduct, because there are disputed material issues of fact as to Defendants' "unlawful" conduct of failing to provide a pro rata refund of premiums when a trip did not commence. Plaintiff contends that there is no "unpled claim" for travel assistance services as "Plaintiff's expert merely analyzed the portion of the Plan premiums attributable to 'travel assistance services.'" *Id.* at 27.

### B. Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment bears the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *See Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 322, 324. The nonmoving party cannot defeat summary judgment by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes*, 398 U.S. at 158–59). The nonmoving party's affidavit or "declaration is to be accepted as true" and the nonmoving party's "evidence should not be weighed against the evidence of" the moving party. *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. However, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial,' and summary judgment is appropriate." *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

### C.  Discussion

Plaintiff brings causes of action for unjust enrichment and unfair competition that rest on the theory that the risk of loss for post-departure coverages does not attach before departure and because Plaintiff's trip was canceled before departure, the risk of loss did not attach and the post-departure coverage premiums were thus unearned. Plaintiff contends that his claims do not require proof that the premium is divisible, the premiums are not 100% earned at the time of purchase, and the policies cover both pre- and post-departure risks.

California's UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "In prohibiting any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1129–30 (9th Cir. 2014). Here, Plaintiff premises his UCL claim on violations of California Insurance Code §§ 481.5(a) and 483(c). (FAC ¶ 68; ECF No. 12 at 8.) Section 483(c) provides that

"[a] person insured is entitled to a return of the premium … [w]hen, by any default of the insured other than actual fraud, the insurer did not incur any liability under the policy." Cal. Ins. Code § 483(c). Section 481.5(a) provides:

> Whenever a policy of personal lines insurance terminates for any reason, or there is a reduction in coverage, the insurer shall tender the gross unearned premium resulting from the termination, or the amount of the unearned premium generated by the reduction in coverage, to the insured or, pursuant to Section 673, to the insured's premium finance company. The gross unearned premium shall be tendered within 25 business days after the insurer either receives notice of the event that generated the gross unearned premium, or receives notice from a premium finance company of a cancellation.

*Id.* § 481.5(a). Plaintiff's argument follows that Defendants' failure to return the unearned premiums attributable to post-departure benefits was a violation of the California Insurance Code because Defendants did not assume the risk of covering post-departure risks for Plaintiff's canceled trip. At issue is thus whether the Policy is severable such that the risk of loss for post-departure benefits attaches after departure and Defendants' retention of any unearned premiums for post-departure benefits was unlawful, unfair, or fraudulent conduct. Plaintiff's unjust enrichment claim, which requires a showing of receipt of a benefit and unjust retention of the benefit, *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000), also hinges on that same theory that the risk of loss attaches after departure. Plaintiff's argument follows that if the Policy is divisible and the risk of loss attaches after departure, Defendants received a benefit of the unearned premium and unjustly retained it. Thus, both of Plaintiff's claims rest on whether the Policy is divisible, which the Court must consider at this stage in the proceedings ruling on Defendants' Motion for Summary Judgment. *See California v. Continental Ins. Co.*, 55 Cal.4th 186, 194 (2012) ("In general, interpretation of an insurance policy is a question of law that is decided under settled rules of contract interpretation.").

Several other courts have considered the issue of a travel insurance policy's divisibility, and while none are binding on this Court, these cases are instructive and persuasive. In *Rivard v. Trip Mate, Inc.*, No. 22-1554, 2023 WL 2624721 (3d Cir. Mar. 24,

2023), the plaintiff brought claims against an insurance plan administrator and insurer for unjust enrichment when they "retained a portion of [the plaintiff's] travel insurance premium," which pertained to a plan that contained pre- and post-departure benefits, "after his trip was cancelled due to the COVID-19 pandemic." *Id.* at *1. The Third Circuit held that the policy was not severable, the contract was enforceable, and the plaintiff's unjust enrichment claim was foreclosed. *Id.* at *3–4. In reaching this holding, the court considered numerous facts, including (1) the plaintiff paid a single "gross premium for the entire travel protection plan"; (2) the plan did not "apportion the premium amongst the different parts of the contract"; (3) "payment was not contingent on completion of individual units or portions of the contract"; (4) the "premium was certainly interrelated among the travel protection plan's parts, given that the risk of trip cancellation affects the likelihood of post-departure risks and contingencies arising, which in turn affects the prices of the post-departure insurance and the concierge assistance services"; and (5) "the contract was take-it-or-leave it" such that the plaintiff did not have the option to purchase only certain parts of the contract. *Id.* at *3–4.

In *In re Generali COVID-19 Travel Ins. Litig.*, 576 F. Supp. 3d 36 (S.D.N.Y. 2021) ("*Generali*"), the court considered and rejected the same theory—that the plaintiffs were "entitled premium refunds where the risk covered by a policy did not attach, and that the post-departure risks covered by the Policies did not attach" such that it was unjust for Generali to retain the premium relating to post-departure risks. *Id.* at 49. The court evaluated similar facts as those in *Rivard* in reaching this conclusion: (1) the policies' premiums were "non-refundable after ten days," (2) the policies contained language that the insured purchased "single pay, single term" insurance, (3) the policies did not "itemize pre- and post-departure coverage," (4) the plaintiffs "paid a single premium in gross," and (5) "the pre- and post-departure risks were independent: the possibility of trip cancellation affected the likelihood of post-departure risks arising, a possibility that may be priced into the cost of the insurance." *Id.* at 52.

Similarly, in *Haas v. Travel Ins. Servs., Inc.*, 679 F. Supp. 3d 962 (C.D. Cal. 2023), the plaintiff purchased travel insurance that had pre- and post-departure coverage for a trip that was cancelled prior to departure due to COVID-19 and brought unjust enrichment claims for retaining the post-departure benefits portion of the premium. *Id.* at 964–65. The Central District of California considered the same facts as in *Rivard* and *Generali*: "purchasers in this case paid a single, gross premium for a single pay, single term, take-it-or-leave-it insurance policy that provides no strong indicators of divisibility" and "the pre- and post-departure components are interrelated and interdependent, as the risk of trip cancellation directly affects the likelihood of post-departure risks arising." *Id.* at 969–70. The court held that, based upon these undisputed facts, the policy at issue was not severable, the entire risk attached at the time of purchase, and the plaintiff's unjust enrichment and other claims under California law failed. *Id.* at 969–70; *cf. Seibel v. Nat'l Union Fire Ins. Co.*, 655 F. Supp. 3d 212, 221 (S.D.N.Y. 2023) (holding that the plaintiff's unjust enrichment claim for a partial refund of the premium portions attributable to post-departure benefits was barred because he "paid single, upfront premiums in gross, and his trips were cancelled *after* an express reimbursement period had expired").

Here, the undisputed facts in this case are as follows. The Plan at issue is a short-term, single pay, single term, and non-renewable plan. (Pl. Resp. to DSUF, ¶ 39.) The Plan's benefits and coverage are not offered for sale separately. *Id.* ¶ 3. The Policy does not itemize the insurance premium by the benefit type, nor does it allow for an insured to bifurcate the Policy or return unused coverages for a partial refund of the total price paid. *Id.* ¶¶ 3, 44. In order to calculate a single insured's Gross Premium charged, every benefit's expected claim costs are aggregated together, and the total of this value is adjusted by certain factors contained in the manual. *Id.* ¶ 40. The Policy contains a 14-day look period that states:

> If You are not satisfied for any reason, You may cancel insurance under this Policy by giving the Company or the agent written notice within the first to occur of the following: (a) 14 days from the Effective Date of Your Insurance; or (b) Your Scheduled Departure Date. If You do this, the Company will

refund Your premium paid provided no Insured has filed a claim under this Policy.

(ECF No. 60-2 at 301.) The Policy's Excess Insurance Limitation provision states: "Recovery of losses from other parties does not result in a refund of premium paid." *Id.* at 323. Other than these provisions, the Policy does not provide any information about a refund.

The same relevant facts the courts in *Rivard*, *Haas*, and *Generali* considered are present in this case: Plaintiff paid a single lump-sum premium for the entire insurance Plan; the Plan was a single pay, single term, and short term policy; the Plan does not itemize the premium based on the benefit type; Plaintiff's payment was not dependent on completing individual portions of the contract; and the Policy was take-it-or-leave-it in that Plaintiff was not given an option to purchase only some parts of the contract. Additionally, based upon the evidence before the Court, the pre- and post-departure risks are interrelated because the risk of canceling a trip impacts the likelihood of post-departure risks thereby arising. (*See, e.g.*, ECF No. 66-3 at 20–21 (Declaration of Julie Hall).) While Plaintiff points to language in the Policy stating that the "effective dates" for the pre- and post-departure benefits differ (ECF No. 60-2 at 303), the short term Policy is a single pay, single term, and non-renewable policy that does not itemize based on type of benefit, calculates premiums based on a rate manual, is not sold in a piecemeal form based on type of benefit, and gives customers a 14-day look period in which to cancel but does not otherwise provide for a refund. (*See also* Hall Decl. at 21 ("Post-departure coverage begins on the day a trip starts because that is when the insured may experience the actual loss. However, the risk for the pre-existing condition attached prior to the date of departure, since by definition the existence of that risk is set prior to the beginning of the trip.").) Based upon the undisputed facts and evidence before the Court, the Court finds that the pre- and post-departure benefits in the Policy are intertwined, the Policy is indivisible, and the entire risk of loss for Defendants attached at the time the Plan was purchased. Because the Plan is a single interdependent contract and the premium is indivisible, there is no "reduction in coverage"

or "unearned premium" if a covered trip is cancelled, and therefore California Insurance Code § 481.5 is not violated. There likewise is no unjust retention of the premium, or unfair or fraudulent business practice under California law.

Plaintiff contends that in ruling on motions to dismiss and for class certification, the Court found that, with the same evidence as presented now, there is sufficient "evidence to support an inference that Defendants unjustly retained that benefit at Plaintiff's expense." (ECF No. 101 at 15 (quotation omitted).) However, the standard of review at the summary judgment stage is different than those at the motion to dismiss and class certification stages. At this stage in the proceedings, Defendants satisfied their burden of demonstrating summary judgment is appropriate based upon the evidence and undisputed facts discussed above. Plaintiff then must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Here, Plaintiff primarily relies on Charles C. DeWeese's report to support Plaintiff's arguments that the case contains material issues of fact.[1] However, DeWeese's opinion contains statements with legal analysis, which he is not entitled to opine. (*See, e.g.*, ECF No. 60-3 at 2 ("I have also been asked to provide analysis as to whether Defendants should and could have made a refund for a portion of the consumers' policy premiums…."), 18 ("It is consistent with prevailing insurance practice, and the reasonable objective expectation of state insurance regulators, that refunds should be provided to customers for the unused portion of insurance coverage at issue in this litigation.").) The statements which DeWeese is permitted to opine are not sufficient evidence for the Court to find that there is a material issue of fact for a jury's determination because the language in the Policy indicates that the Policy is

---

[1] Defendants "object to all statements by DeWeese in the Response because his statements are inadmissible, conclusory, and unsupported by evidence." (ECF No. 111 at 4 n.5.) Defendants state that "[a]s shown in Defendants' prior motion to exclude DeWeese …, he is not an expert in travel insurance." *Id.* The Court previously "denied without prejudice to reraise … later in these proceedings" Defendants' motion to exclude DeWeese. (ECF No. 82 at 18.) Defendants have not filed a renewed motion to exclude as to DeWeese's statements.

indivisible and the issue of premium refunds is addressed in the 14-day free look provision. *See Continental Ins. Co.*, 55 Cal.4th at 194 (providing that "interpretation of an insurance policy is a question of law that is decided under settled rules of contract interpretation"); *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (Ct. App. 1996) ("[I]t is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter."). Plaintiff does not cite to any legal authority to support a conclusion that this Policy includes language to indicate that it is severable and that the risk of loss would not attach at the time of purchase.

Plaintiff additionally contends that Defendants' financial statements refute Defendants' argument that all of the travel plan premiums are earned at the time of purchase. Plaintiff contends that the statements show "Defendants' premiums are earned ratably over the terms of the policies, and not 100% at the time the plans are purchased" and "reflect the fact that Defendants recognize charges against earnings for unearned premiums." (ECF No. 102 at 19–20 (quotations omitted).) However, Defendants have demonstrated that Defendants' travel insurance premiums are reported in Defendants' financial statements as earned as they are written at the time of purchase. (ECF No. 111-1 ¶¶ 7–10, 12 (Declaration of Mary Quill).) Plaintiff has not submitted adequate evidence to create a genuine dispute of fact as to this issue.

Defendants have shown that the language of the Policy indicates that it is indivisible and the risk of loss attaches at the time of purchase. In the absence of legal authority that the Policy must be read as containing divisible benefits or facts showing that the Policy provides a strong indication of severability, the Court finds that the entire risk attached at the time of purchase and the Policy is not severable. Because Plaintiff's claims hinge on

this theory, Plaintiff's unjust enrichment and unfair competition claims[2] fail as a matter of law.

## IV. MOTION TO FILE DOCUMENTS UNDER SEAL

Defendants move to file the under seal "a portion of paragraph 11 in the Declaration of Mary Quill reflecting certain confidential premium data for U.S. Fire and its affiliates ('Premium Data')." (ECF No. 109 at 2.) Defendants assert that the data has information that has been designated as confidential because it contains "non-public, confidential, proprietary, and commercially sensitive information." *Id.* Plaintiff did not file any response to Defendants' Motion to Seal.

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). This is "because court records often provide important, sometimes the only, bases or explanations for a court's decision." *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) (quotation omitted). Accordingly, when considering a sealing request, "a strong presumption in favor of access" is generally a court's "starting point." *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194 (9th Cir. 2011) (quotation omitted). That presumption can be overcome only by a showing of a "compelling reason," that "outweighs the general history of access and the public policies favoring disclosure." *Id.* at 1194–95.

The information contained in paragraph 11 of the Mary Quill Declaration is the type "of business information that might harm a litigant's competitive standing" if it was made publicly available. *Nixon*, 435 U.S. at 598 (citation omitted). A compelling reason has been

---

[2] As to Defendants' request for the Court to enter summary judgment "on any claim by Plaintiff for a refund of non-insurance fees for assistance services" as it is an unpled claim (ECF No. 90-1 at 31), Plaintiff contends in response that they do not bring an "unpled claim" for travel assistance services (ECF No. 102 at 27). Because the parties agree that Plaintiff does not bring a claim for a refund of non-insurance fees for assistance services, the Court need not address Defendants' arguments as to this unpled claim.

shown to seal the business information. Defendants' Motion to File Documents Under Seal is granted.

## V. OTHER PENDING MOTIONS

Pending before the Court are the Motion for Approval of Class Notice Plan (ECF No. 115) and Discovery Appeal (ECF No. 116). Both of these motions relate to class notification issues and do not relate to the merits of Plaintiff's claims.

Because the Court grants summary judgment in favor of Defendants, the Motion for Approval of Class Notice Plan and Discovery Appeal are denied as moot.

## VI. CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 90) is granted as follows. Defendants' Motion for Summary Judgment is granted as to all remaining claims in the FAC.

IT IS FURTHER ORDERED that the Motion to File Documents Under Seal (ECF No. 109) is granted.

IT IS FURTHER ORDERED that the Motion for Approval of Class Notice Plan (ECF No. 115) and Discovery Appeal (ECF No. 116) are denied as moot.

The Court directs the Clerk of Court to enter judgment in favor of Defendants.

Dated: August 13, 2024

Hon. William Q. Hayes
United States District Court